THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee, *v.*
JUAN B. HUYKE, Defendant and Appellant.

No. 9993.   Argued November 7, 1949.—Decided January 9, 1950.

*Luis E. Dubón, R. García Cintrón* and *L. Ríos Algarín,* for appel-
lant.   *Vicente Géigel Polanco, Attorney General, (José C.
Aponte, Acting Attorney General,* on the brief) and *Carlos
J. Faure* and *Eduardo Negrón Rodríguez, Assistant Attorneys
General,* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the
Court.

The People of Puerto Rico represented by the Commis-
sioner of the Interior brought proceedings to condemn a parcel
of land of 4.36 acres (*cuerdas*) equivalent to 17,168.35
square meters, located in the Hato Rey ward of Río Piedras,
belonging to defendant Juan B. Huyke.   To this end it de-
posited in the lower court, at the disposal of the defendant,
the sum of $17,440 which it estimated was the reasonable

market value of the land and immediately was vested with title and took possession thereof. The land was condemned in order to construct a highway leading from Km. 9 H. 2 of insular highway No. 1 to Km. 5 H. 2 of highway No. 2. The defendant was not satisfied with the amount deposited by the plaintiff which was tantamount to appraising the condemned land at the rate of $1.01582 per sq. m. Thus, the whole controversy in the lower court centered solely and exclusively on the market price of the land. After having heard the evidence for both parties, the court, taking the condemned parcel as a unit, reached the conclusion that its reasonable market price was $2 per sq. m. Consequently, it ordered the plaintiff to pay to the defendant the additional sum of $16,896.70 plus legal interest at the rate of 6 per cent per annum until final payment. As in the lower court, the only question raised in this appeal is the determination of the value of the land. The defendant insists that he should be compensated at the rate of $8 per sq. m. The plaintiff, in turn, accepts as reasonable the appraisal of $2 per sq. m. fixed by the lower court. The discrepancy hinges principally on the method adopted by the defendant to ascertain the value. In his brief defendant describes the method as follows:

"After segregating 6,800 meters for streets from the condemned parcel of land which consists of 17,168.35 sq. m., there would remain 10,500 meters for lots, that is, 35 lots of 300 sq. m. each, which calculated, not at the maximum price at which other lots have already been sold, but at $8 per sq. m., would only produce a total of $84,000. This sum, less the cost of the street at the rate of $50 per lineal meter, amounting to $26,000, would leave a profit to Mr. Huyke of $58,000, which is the value of the lots and the amount that should be awarded as compensation."[1]

█ █ As correctly maintained by the plaintiff the method used by the defendant does not lead to an accurate determina-

---

[1] In his answer the defendant claimed the amount of $40,000 as the reasonable value of the land.

tion of the reasonable market value, for it relies on uncertain and speculative bases. It can not be possibly determined in advance that all the lots will be sold at $8 per square meter, nor the time that might elapse before all these lots are sold. Without this data, how is it possible to determine what amount shall the urbanizer pay or fail to receive as interest on the capital invested in the development from the time it is commenced until the last lot is sold?

For the purpose of making a just appraisal we must consider the land as a whole and not as lots to be condemned; we should not take as a basis what a speculator, at his peril, might be able to obtain in the future, but the price that a buyer is willing to pay at a voluntary sale and that at which a vendor, under like circumstances, would be willing to sell, taking into account the condition of the land at the time of the condemnation and the most profitable use to which the owner might devote it within a reasonably near future. George L. Schmutz, Condemnation Appraisal Handbook (1949, ed.) p. 224; I Nichols, The Law of Eminent Domain, (1917, 2d ed.) § 219; *W. A. Manda* v. *City of Orange*, 82 Atl. 869 (N.J. 1912); *City of Los Angeles* v. *Hughes*, 262 P. 737 (Cal. 1927); *Pennsylvania S.V.R. Co.* v. *Cleary*, 17 Atl. 468 (Penn. 1889); *United States* v. *3544 Acres of Land, etc.*, 147 F.(2d) 596 (C.A. 3d 1945).

█ The plaintiff introduced evidence to the effect that several lots of the development of the defendant adjacent to the condemned land had been sold at $2 per square meter and even at lower prices and that said parcel contains a tract of 3,675.25 sq. m. which is marshland. On this score we can not agree with the appellant that the lower court committed manifest error in appraising the condemned parcel of land at the rate of $2 per square meter. The judgment of the lower court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.