**The STATE of Delaware upon the relation of Henry T. PRICE, Lemuel H. Hickman, Thurman Adams, Jr., William G. Dorsey, William J. Francis, C. Wardon Gass, Frank H. Mackie, Jr., William R. Murray, George M. Nelson, Elmer Pratt, and Walter L. Wheatley, Constituting the State Highway Department of the State of Delaware, Plaintiff,**

**v.**

**2.7089 ACRES OF LAND, be the same MORE OR LESS, Situate IN NORTH MURDERKILL HUNDRED, KENT COUNTY, and State of Delaware, and Ebe Stephen Townsend, Jr. and Rose Ann Townsend, his wife, Defendants.**

Superior Court of Delaware.

Kent.

June 27, 1969.

Joshua M. Twilley, Dover, for plaintiff.

A. Richard Barros, Dover, for defendants.

## OPINION

STOREY, Judge.

The question for determination is whether the testimony of the defendants' experts on the damages due defendants, for the taking by the State of 2.7089 acres of his 21 acre tract, is admissible, since the testimony was based on a stated number of subdivision lots and their expected purchase price and since there was no reasonable probability of subdivision.

At the outset, it should be noted that this is a partial taking case. The plaintiff argued that the whole 21 acres before taking the 2.7089 acres was valued at approximately $3,000.00 per acre and that after taking, the tract was worth proportionately less, that is, $9,000.00 less. Plaintiff agreed that the area taken was best used for residential purposes.

The defendants argued that the area taken could be used for residential buildings and that the condemnation cost the owner 5 to 9 lots, with the monetary loss between $21,000.00 and $27,000.00. Even without the verbatim record, it appears that defendants' experts spoke exclusively in terms of the area condemned, without regard to the remainder of the tract. Defendants' brief would have the Court believe otherwise, however. For reasons stated below, more than the small area condemned must be considered.

Assuming that the defendants' experts directed their attention only to the condemned property, then defendants carved out an unrealistic subdivision of their 21 acre tract.

Plaintiff argues that defendants should not be allowed compensation for theoretically creating a subdivision in the area taken by the State. Plaintiff cites for his authority 0.089 of an Acre of Land, etc. v. State, 1 Storey 315, 145 A.2d 76 (Del. Supreme Ct. 1958) (hereinafter called the *Martin* case). On the other hand, the plaintiff states that the *Martin* case merely:

"* * * reiterated the well-established rule that compensation is awarded based

upon the best and highest use of the land * * *. The court did not thereby imply that use for subdivision purposes may not be considered when such in fact appears to be the best use of condemned land." (p. 14, Defendants' brief).

He goes on to say that "The trial judge did permit testimony of subdivisional valuation as part of the total evidence and the Supreme Court did not conclude that such was improper". These are correct statements of the case.

Defendants then state that the Supreme Court in *Martin* would have to be wrong if the Court in the case at bar followed the advice of the plaintiff and excluded the testimony of the defendants' expert witnesses.

A careful reading of *Martin* discloses that the property remaining after condemnation comprised a relatively small area. The landowner there claimed that the area, although part of a larger tract, could be considered separate because it was unimproved (unlike the remainder of the tract).

The landowner stated that he wanted to build a gas station there and now could not because of the condemnation. The Commissioners decided that the main tract had been developed for its best use and that the area in question could not be considered for a gas station. The Commissioners then awarded landowner minimal damages. The Supreme Court approved the decision. The trial court allowed the evidence of valuation because the fact question of best use had not been decided. To have refused admission of the value of the land for a gas station would have been error. Such a question of fact does not exist in the Townsend case. Both plaintiff and defendants agree that the best use of the property is for residential purposes. Further, the land discussed for a gas station in the *Martin* case comprised an area suitable for only one lot for one such business. There was no doubt as to the number of lots the area could be divided into. By defendants' own admission there were several possible subdivisions of the condemned

Townsend property. The contention of the defendants that the *Martin* case must be interpreted as requiring the Court to allow testimony of the value of the subdivided lots in the Townsend case is, therefore, invalid.

The rationale of the *Martin* case should, in fact, be applied in the case at bar. The *Martin* rationale is stated thusly:

"* * * Compensation will not be allowed appellants in excess of their actual loss on the basis of an imaginary, unnatural or theoretical subdivision of their property when it is not, in fact, subdivided or on the false basis of the ownership of only a portion of the lot when, in fact, the lot in question constitutes only a part of a much larger lot. In re Fourth Avenue, 221 App.Div. 458, 223 N.Y.S. 525, 527; City of Grand Rapids v. Barth, 248 Mich. 13, 226 N.W. 690, 64 A.L.R. 1507." (Martin, 145 A.2d at 79).

The facts in *In re Fourth Avenue, supra,* and in *City of Grand Rapids, supra,* are not fully in accord with the case at bar, but the crux of *In re Fourth Avenue, supra,* is a quote from In Matter of City of New York (Westchester Avenue), 126 App.Div. 839, 111 N.Y.S. 351:

"The Watson estate, which obtained the awards complained of, owns the abutting lands extending back hundreds of feet, and the commissioners awarded damages on the theory that city lots were taken. No lots were destroyed, for the owner had unlimited lands in the rear to make city lots of proper depth. The effect of taking a strip off the front adjacent to the old highway was simply to set the lots so much further back, and face them upon a new, widened, and improved avenue. The assessment of damages should have been on an acreage valuation instead of a city lot valuation. * * *"

The *Westchester Avenue* case seems directly in point with the case at bar, thus melding the fact of Townsend and the rationale of *Martin*. The defendants could have moved back their so called subdivi-

sion from the area condemned. They have thus created the "unnatural subdivision" or false basis of ownership of only a part of a much larger lot proscribed in *Martin*.

While Delaware law has not definitively answered the question whether the value of subdivision lots should be received into evidence in condemnation cases, the Delaware Supreme Court has refused to admit evidence of unaccepted signed offer to purchase neighboring property. State v. Parcel No. 1–1.6401 Acres of Land, etc., 243 A.2d 709 (Del.1968).

■ The Delaware Court has not yet held, but other neighboring jurisdictions have decided, that the value of the subdivision lots should not be received into evidence because of the costs of improvements, uncertainty of date of sale of the lots, and other variable factors. Brewer v. Blue Mountain Consolidated Water Co., 126 Pa.Super. 553, 191 A. 408 (1937); Rothenberger v. City of Reading, 296 Pa. 423, 146 A. 104 (1929); W. A. Manda v. City of Orange, 82 N.J.L. 686, 82 A. 869 (1912). See also 29A C.J.S. Eminent Domain 273 (2) p. 1196 and 5 Nichols on Eminent Domain, 3rd Ed. 18.11 (2), p. 159. Merely because defendants' property lies near city water lines and a public way, such location does not remove enough of the variables to permit the admission of testimony as to the value of the alleged building lots. Based on State v. Parcel No. 1, *supra*, and the rule adopted elsewhere it would not be much of a leap for the Delaware Supreme Court to declare inadmissible the valuation per lot in the instant case.

■ The matter of intent of the defendants has been made an issue in the case at bar. Since defendants did not intend to subdivide their property, there was no reasonable probability of subdivision. The settled rule in Delaware is that just compensation is the market value of the property at the time of the taking in view of all available uses and purposes of the property at the time. 16.50, 10.04629, 3.34, 1.84,

etc., Acres of Land v. State, 208 A.2d 55 (Del.1965). At the time of the condemnation of defendants' property there was an available use for the property—residences. All parties agree to this. The settled rule does not take into account the intent of the landowner. And, indeed, none of the Delaware cases speak of intent as being crucial. This is due to the fact that a use existed or an intent to modify the land had been made. In neighboring jurisdictions, though, the matter of intent has merely been another factor to consider in determining loss of value to the owner. Lustine v. State Roads Commission, 217 Md. 274, 142 A.2d 566 (1958); *Rothenberger, supra,* and should be so considered in Delaware.

In accordance with the above opinion, the plaintiff's motion for a new trial should be granted. Defendants' experts should not be allowed to base their valuation on the number of subdivision lots and the value of each.

It is so ordered.